Good morning. Our first case is Beggs v. Bd. of Ed. of Murphysboro Unit School Dist. 186. Argue it for the appellant. May it please the court. My name is Shane Jones and I represent the Board of Education of the Murphysboro School Dist. 186. There are a few issues in this matter before the court this morning. And your honors, you are not bound by the lower court's decision on any of those issues. The first involves the improper issuance of summons in an administrative review decision. The school code, section 24-16, states that the administrative review law is the method for reviewing a final decision by a school board on a dismissal of a teacher for cause. That means that you must comply with the requirements of the administrative review law. And as your honors are aware, that requires strict compliance because of the fact that it is a deviation from common law. It's not something we can get away with good faith. In fact, the provisions require that the parties shall be barred from administrative review unless they strictly comply within the time and the manner set forth in the statute. Section 103 requires that this be done within 35 days of the decision which is meant to be reviewed. And section 105 requires that service must be affected by the clerk of the court and addressed to the agency, which is the school board, at its main office in the state. Now, as you're aware, there is no question that plaintiff failed to strictly comply with these requirements. Plaintiff addressed her matter on administrative review, including the summons, to an individual named Bob Chambers and erroneously listed him as the president of the Board of Education. Mr. Chambers is not the president. He's not a member, and he has no affiliation with the Board of Education. Moreover, the summons was directed at the erroneous street address, an address that does not belong to the Board of Education and which, in fact, belongs to another entity, the Regional Office of Education, which is a completely separate statutory entity having no real relation to the Board of Education. Because of these failures and because of the clear requirements of the administrative review law, defendants properly moved to dismiss. And only in response to that motion to dismiss, the plaintiffs seek to issue an alias summons. Thereby, they hoped correcting or curing the defects which had already gone since past. The alias summons that was issued listed the correct board president and the correct address for the Board of Education, but it did so 80 days after the opinion that was sought to be reviewed for which review was sought, and it did so only after the matter had been called to the attention of the plaintiff and the court for dismissal. Dismissal should have been granted under the clear administrative review law precedent of this court and the other circuits. Plaintiffs make some argument in the brief with regard to the concept of good faith. There is a narrow good faith doctrine that can apply to some of the failures, but none of them apply to the failures in our matter. And the reason is because there was no error by the clerk. This is not a matter where it was good faith shown by the plaintiff in the attempt, but the clerk failed to act within 35 days, for instance. Nor was there any error or omission or misleading behavior by the defendant, which is the only other situation where sometimes a plaintiff will be able to escape these strict requirements. It's frankly inexplicable why it was issued the way that it was and why it was written the way that it was, and there's no explanation in the record for Mr. Bob Chambers, a non-member of the Board of Education, nor for the Walnut Street address, which is not the address of the Board of Education. No explanation has been given. No explanation is forthcoming, and no explanation would be sufficient. Under our facts, all the proceedings that led to the decision to dismiss the plaintiff occurred on Ava Road. The decision, which is sought to be reviewed here by plaintiffs, emanated from that address and clearly lists that address. The board president, the actual president of the Board of Education, Mr. Cripps, actually was a witness during the hearing, and the hearing took place at that address. So this is not a situation where the plaintiff can get away with arguing that they tried in good faith to comply. That's simply not the case. In fact, I'll submit, Your Honors, that if the plaintiff's argument were accepted, it would make the provisions of the Administrative Review Law and the four cases on strict compliance, it would render them meaningless. The reason I say that is because of our exact facts. Here there was not strict compliance, and that's a matter of record. The defendant properly moved to dismiss, and it will be in response to that correct motion to dismiss that they try and seek an immediate response. If you accept his theory that's offered in an opposing counsel's brief, then they can always issue an alias summons 50 or 80 days later and cure the problem. Then there would be no meaning to the requirement for strict compliance. Now, that can't be the appropriate decision. There is a raft of case law, well-traveled ground, and factors of case that it was too new to put into the briefs that came down just last week. I'm sorry to cite it here from the podium, but the case is against Palos, is by Palos Bank. If you want to cite additional authority, I understand, Your Honor. Why don't you seek leave to do that and give the other side a chance to respond? Setting that case aside, the brief contains numerous cases. One of them is named Palos and is against the Illinois Municipal Retirement System, IMRF. One of the cases goes by the name of Mannheim and is against the teacher's retirement system. In these cases, very narrow technical errors in the issuance or service of summons were deemed to be grounds for rejecting. There's only one case that cited really with any authority on the other side, and that's a case called Burns. It is an extremely strained interpretation of Burns, and I'll spend just one minute to distinguish Burns, Your Honor, because this matter really should have been dismissed on the 2619 motion, and that is a de novo question for the court. In Burns, the error of plaintiff's summons and issuance and the service was not against the agency upon whom review was sought. It involved a third-party defendant, a separate party. They have different rules for those separate parties versus the agency. You're not required to make the service at the main office in the state as you are with the agency. More importantly, that entity, that third-party agency, had during the pendency of that administrative proceeding designated an agent and used that agent as its sole appearance throughout those proceedings. And, in fact, when the agency issued its determination, it listed the agent and the address of the agent as the only address for that party. Third, this was a pro se case, Burns, and the pro se plaintiff went in and spoke with the court clerk who directed her to the pro se desk. The pro se desk took a look at the decision which they were trying to appeal, saw the address which was listed there for the agent of the third-party defendant, and used that in creating the summons and issuing the summons. None of those facts are present here. Burns gives no authority to this court for refusal or declining to dismiss the matter under well-traveled law under the Administrative Review Act. The second question that I'd like to address has to do with the appropriate standard of review, or rather who it is, what entity to which deference is entitled under the standard of review. I mentioned before, Your Honors, that Section 24-16 of the Illinois School Code directs the administrative review law to be the vehicle for review, judicial review, of decisions, final administrative decisions, or dismissals of a school board for cause, a school board dismissal for cause. The review is of the agency's decision, not of the lower court's decision. Again, this is well-established law that you're now looking at the administrative decision below, which is the court, which is not the court, but rather is the Board of Education. And there are well-established standards to be used when you review the board's decision. If the question is an issue of law, of course, you owe no deference to the board. You can decide those issues on to no overview. On the other hand, if it's a question of fact that was decided by the Board of Education, then the court is to reverse those facts only if they are against the manifest weight of the evidence, a very high bar indeed. And then, of course, on questions that are mixed issues of law, in fact, court on review is to reverse only if the decision is clearly erroneous. Now, under those standards, and in light of the material in the briefs and appendix and record before the court, there's really no question that the board's decision of July 30, 2013, should be affirmed. There's really no question that there is sufficient evidence that it's not against the manifest weight, and there's really no question that it would be able to be upheld as against the clearly erroneous standard. But there is some recent change in the law that makes this issue somewhat more complex, and that's what a lot of the briefs are devoted to, is trying to sort through those recent changes in the law. So if you'll allow me, I'll mention just for a moment that a bill called Education Reform Act, some people refer to it as Senate Bill 7, which was issued in 2011, recently changed the mechanism for teacher dismissals in downstate cases such as this. It's fair to say that previously, the final decision, which was then subject to administrative review under the standards I talked about, was made by a hearing officer. However, during the changes wrought by Senate Bill 7, as part of the Education Reform package, that was split so that now the hearing officer conducts a hearing, develops a record, and then makes a recommendation to the Board of Education. But the Board of Education makes the final decision, and it's their decision that is the administrative decision for purposes of administrative review. At the back of our reply brief, as an aid to the court, we included an advanced legislative copy of the act showing the strikethroughs and the underlines. You can see the additions and the changes that were made. Time and again, you will see the language which previously read, the decision by the hearing officer, or the hearing officer will issue a decision, was amended to say the hearing officer will issue a decision in certain kinds of cases, which is not the case, of course, today, or a report and recommendation. That's in President Section 6, President Section 7 five times, Section of President 8, President Section 9. And there's no other way to read the statute than to understand that the decision-making authority has been moved from the hearing officer to the Board of Education, and therefore it's that Board of Education's decision that's on administrative review. Finally, I'll just mention on this issue that Let me interrupt you. As far as citing new authority, I made a reference, but I think both of you referred to this may be a case of first impression to come before an appellate court where Senate Bill 7, which was an act that is put into effect. I guess we would welcome from either side, if there is new authority out there where this has come before an appellate court before, that you'd have the opportunity to do that and ask the court to do that. I think these were filed as some of these briefs, so there's probably none. To me, it struck me as unusual where one of the parties in presenting the evidence to the hearing officer would then have the ability to say, No, hearing officer, your findings were against the manifest way of the evidence. And the evidence that we presented was really the correct evidence. So give us direction on how we're supposed to sort that out. Is that really what the statute is allowing you to do to trump the hearing officer? One of the parties? Your Honor, very good questions. First on the first point, we did engage in some additional last second research up until last night and do continue to maintain that this appears to be an issue of first impression without precedent. In the courts of Illinois, there's no court case that has gone as far as this one on this issue to today's date. Second, as a matter of fact, that is indeed what the new revised compromise statute says. In fact, it's very clear that that's what is to happen. Again, with reference to the legislative copy that was put at the back end of the reply brief, particularly in sections eight and nine, subsection D of 2412, it really does say that the school board can make a decision, even if that's against the hearing officer's recommendation, and provides what the board is to do if that's what its decision is. They have to put an opinion into the decision, they have to explain the reasons for that decision, and they have to make that part of the record. Furthermore, with regard to the facts that the hearing officer found, I'm going to read with your leave, Your Honor, from the statute. It says that the school board's written order shall incorporate the hearing officer's findings of fact, except that the school board may modify or supplement those findings of fact if, in its opinion, the findings of fact are against the manifest weight of the evidence. So the hearing officer's findings of fact are incorporated, but they can be supplemented, and they may even be modified in the board's opinion, if in the board's opinion they're against the manifest weight. And I'll submit that this is not that unusual. Board of Education, this is a seven-person board that administers in Murfreesboro hundreds of employees, thousands of students, in a larger district here in Mount Vernon even more, and, of course, in Springfield further north even more. There's no expectation that the seven lay people, board of education members who may be housewives or bankers that maybe have their day jobs, would preside over a four-day hearing. Very often that is put out to a hearing officer who makes a recommendation as to whether or not a given student is a resident of the district, whether or not a given student had a knife and should be expelled, whether or not a given teacher committed misconduct and should be dismissed. But the recommendations that come up are not binding. And the statute is very clear that they may modify if, and it says in the board's opinion, if in the opinion of the board they're against the manifest weight. Plaintiffs' Counsel tries to make this a standard that the board is the court on review and can only upset the hearing officer. He uses the phrase reverse the hearing officer's findings under certain circumstances and wants to apply the manifest weight standard by the board. That's really not the way that it's written, or else the phrase in its opinion would have no meaning. The decision is the board's to make. Those are the findings of fact that are part of the final decision issued by the administrative agency, and then this court on review applies the well-worn standards to see whether they are against the manifest weight of the evidence or whether on mixed questions they are clearly erroneous. The final point that I'd like to make, Your Honor, has to do with whether the decision to dismiss this particular teacher should be upheld on review by Your Honors. And, again, emphasizing that the appropriate decision under 2416 was the decision by the Board of Education. But it's true that the hearing officer made a contrary recommendation, and it's true that that court below, although you're not bound by his opinion, struggled with the outcome. But the board's decision, which is there in the appendix and is well-written, is well-reasoned, it's careful, thorough, and it's based on the evidence that was presented. It will certainly be sufficient to survive administrative review. Where we have this difference of opinion about the gravity of the misconduct or a difference of opinion about what the proper outcome should be under the changes in Senate Bill 7, that decision was moved from the hearing officer's final decision to the Board of Education's final decision. And respectfully, Your Honor, we included the statement from Senator Lightford, who was the primary mover behind this bill, its chief sponsor in the Senate, and remember, it's Senate Bill 7. And the statement is explicit and unambiguous. It says the board is the employer, and we've switched it so that no longer the hearing officer makes the final decision, the board is the employer, and the board should have that right. This guidance from the district occurred from the principal, whose written warning was then ignored or not complied with. It was promoted to the superintendent level, who addressed the individual teacher with a directive from the superintendent, which was not complied with, and the conduct continued. And it was then raised to the issue of what is known as a board notice of remedial warning. This board notice is included in the statutory scheme for the dismissal of a tenured teacher. It is rare and important. It has the same effect as a final warning or a last chance agreement. Plaintiff testified at the hearing that she understood the gravity of the situation. She took approximately three weeks or a month off work for FMLA following the issuance of the notice of remedial warning. And the board told her, and this is in the record, don't go back until you're good and ready. We're not hurrying you back. In the meantime, they have removed any responsibility from her to perform the other outside requirements, such as the lesson plans for the substitute teacher, for instance. The department took care of that. But when she returned, she was under written warning to comply with the directives issued in that board notice of remedial warning. And on every day that she was back, she failed to comply with one or another of those requirements. There's extensively, it is not an exaggeration to say that the record is replete with evidence over the specific violations. There is some question and dust up over the extent, whether it was only 15 minutes of wasted time or 25 minutes of wasted time, whether it was a late absence for which she sought an excuse from the superintendent, although by this time it was the board's directive not to comply, or whether the issue, the substitute plans came in late, but not so late. But there's really no question that the misconduct occurred. And there's really no question that in a statute, it's now the board's decision to make. And there's really no question. With the board having the ability to make that decision, do you look, in looking at the statute, the application of it, do you look back and say, well, why have the hearing officer involved at all? Why must the parties go through that time and expense and trouble to go to a hearing officer when we're actually reviewing whether or not the board's decision would be against the manifest writing of evidence in the courts? I understand the question, but I believe that the answer is that the administrative hearing, the hearing officer's role is to develop the record, to preside over the hearing, to do the nuts and bolts work for which he's paid a per diem from the parties of the state, rather than have the seven members of the board preside over what was, in this case, a four-day hearing. There were four volumes of transcript. There were 1,100 pages, more than 50 exhibits. I don't think they expect that your layperson, publicly elected board members, are going to sit through that. Rather, I think a hearing officer has his handle on creating that record and then issues a recommendation. That's the legislative compromise, and this bill is part of a broader package, including other elements which are not at issue here but which inure to the benefit of teachers and their unions. Your Honors, I don't think there's any question that any applicable statutes, as amended, or the Administrative Review Act that this matter should have been dismissed. I appreciate your time, and I look forward to your decision. Argument on behalf of the athlete. May it please the Court, Counsel. My name is Ralph Loewenstein, and I'm here on behalf of the plaintiff, Lynn Bates. And because of the limitation of time that we have available for argument today, I'm going to address what I think are the two most important issues in this case. And, of course, I'm available to answer any other questions the Court may pose. But the two issues that I want to address are a matter of the first impression, that being how do we apply the standard of review under this new statute, the statute that was amended in 2001? And secondarily, how do we apply a statute that's been on the books for more than 60 years, that being the remediation provisions and the requirements that there be reasonable warning prior to dismissal, even after that remediation warning is given? But embedded within this, embedded within the factual findings of the hearing officer and Judge Grace's decision, is also a moral dilemma, and that has to do with the responsibility of an adult child to care for a parent in failing health. Anybody here who has ever had the situation where you're caring for a loved one and having to, who is in poor health, and having to balance that with regard to their job responsibilities knows how difficult that is. Most cases, we're blessed having a good employer who supports us through this time and sympathizes with us. Unfortunately, Ms. Faith was not so blessed. In fact, the Board of Education and the administration were well aware of what she was going through. Not only didn't they sympathize, they took advantage of that. And I briefly want to, the Board would prefer, of course, that we ignore that, but you can't ignore it because it's fundamentally part of both the circuit court's decision and the hearing officer's findings. I want to briefly discuss some of the facts because they go to the two issues that I want to discuss. Lynn Bates was a long-term employee of the Murfreesboro School District. On her last four evaluations, by four separate evaluators, she was rated as excellent. But beginning with the 2010-2011 school year, her father's health began to fail, and she stepped up to the plate and she provided care for him during his last illness. He passed away shortly after the end of that school year. Beginning in the 2011-2012 school year, her mother's health began to fail. Her mother, during the course of that school year, went from home to hospital to rehab center,  Once again, Ms. Bates stepped up to the plate and cared for her mother. Now, as a result of that, she missed a lot of school days and used her sick leave during the 2011-2012 school year. And there were, in fact, occasions when she was late arriving at school. What I mean by late arriving at school is that she arrived before the class period actually began, before the teaching part actually began at 8.30, but after 8.15 when the teachers were supposed to be present. Let me make clear a couple of things on this. She had an absolute right to use her accumulated sick leave to care for her mother in both the school code and the collective bargaining agreement. And the hearing officer made factual findings which were undisputed by the Board of Education that it was commonplace in the school district for teachers to arrive between 8.15 and 8.30 and that that did not interfere with Bell to Bell teaching. On February 10th, she was late getting to school. She'd been up late with her mother. She was physically and mentally exhausted. She overslept. She called the school to let them know she would be late. But as soon as she got there, the superintendent suspended her with the recommendation to the board that they issue a notice to remedy. And, in fact, on February 21st, the board issued a notice to remedy. And that notice to remedy had three key provisions. Teach Bell to Bell. Provide lesson plans when you're not going to be present. Arrive at school on time. February 22nd and 23rd, she taught. There's no information in the record that anything in particular happened on those days. Then, because of the continuing deterioration in her mother's health, she had to take a leave of absence. She returned on March 19th and March 20th, taught those two days. And then, because of the then-critical health of her mother, who was hospitalized and laying close to death in her hospital bed, she took sick leave on the 21st, 22nd, 23rd, and 26th of March. She returned on March 27th, only to be met by the superintendent, who immediately suspended her with the recommendation that she be dismissed. And, in fact, she was dismissed by the Board of Education for a violation of the notice to remedy. The simple issue that I want to first address with the court, and one that I think you could probably dispose of this case on, is whether or not the remediation period was sufficient. Section 24-12b1 of the school code, and this language has been part of a statute within the state of Illinois for more than 60 years, states as follows, Before setting a hearing on charges stemming from causes that are considered remediable, a board must give the teacher reasonable warning in writing, stating specifically the causes that, if not remedied, may result in charges. Ms. Begg's remediation period consisted of four days, four school days, when she was actually present. Four school days, after 19 years of teaching, under these circumstances. Under the statute, that is simply insufficient to meet the requirements of the remediation period, in and of itself. It's particularly important, and particularly true, when we consider what actually happened during this very short remediation period. There were no unexcused late arrivals at school. The only testimony with regard to a failure to teach bell-to-bell came from a single witness who was an aide who was hired to translate for a non-English speaking student. She had never taught before. She had never been employed in a school district before January. She had no expertise or training in teaching math. And her testimony basically was that Ms. Begg's had not begun class teaching for a period of 10 to 15 minutes, on a single class period, on a single day. Now, her testimony was rejected by the hearing officer for good and sufficient reasons, and we've addressed that at great length in our brief. And in fact, if you read only one part of the transcript in this case, I would suggest you read the testimony of a board witness, Matt Morfield, who testified in part to this very point and some of the other points that are key to the board's findings, which I think are erroneous. But even if you accept her testimony verbatim and totally disregard the findings of the hearing officer, the arguments we've made, failure to start class, failure to start teaching for 10 to 15 minutes on a single class period on a single day, is simply not cause for dismissal, is not a violation of this remediation plan or this notice of remedial warning. With respect to the lesson plans, even though her mother was near death, laying in a hospital bed, she still managed to send lesson plans to her colleague by e-mail, which was the method used in this school district to transmit lesson plans on those days when something unexpected caused the teacher not to be present. And those lesson plans were delivered to the classroom, according to the hearing officer, within three minutes of the beginning of the class, without any adverse effect on the students. Whether you consider this to be a issue of law or you consider this to be an issue of mixed question or law of fact, it's simply not sufficient in terms of a remediation period. Now I want to discuss a more complicated issue, and that is how do we apply this new standard of review? While counsel and I might disagree on how we apply this, what we don't disagree on is that this is a matter of first impression, and I, too, have looked to see if there's any new law. Unfortunately, that's not the case. So this court is going to be writing on a blank sheet of paper, and whatever you put on this paper, that is going to be the law of the state of Illinois until somebody disagrees with that of the higher authority. Prior to the change in the statute, the hearing officer made factual findings, and based upon those factual findings, made conclusions of whether or not a cause for dismissal existed. Factual findings, of course, were reviewed by courts against the manifest weight of the evidence. The proven facts were then reviewed by a court to determine whether or not the hearing officer's decision to either reinstate or uphold the dismissal were arbitrary, unreasonable, and not based upon related to service. The amendments in 2011 created a role for the Board of Education in this process, but it also created unique procedures and a unique standard of review for purposes of administrative review. And I repeat that. They are truly unique procedures and unique standards of review, and I've looked, and I can't find a single statute which models this or which this is modeled from. What it didn't do is eliminate the role of the hearing officer, just as you mentioned. In fact, not only did it eliminate the role of the hearing officer, it reaffirmed it. It also reaffirmed the requirement that the hearing officer be qualified by experience, and it added a new training requirement that was not in the previous statute. In other words, the legislature meant what they said, that there is a role for a hearing officer. Furthermore, it distinguished the role of the hearing officer in downstate teacher dismissal for cause cases from the hearing officer in the Chicago public school system. Both statutes were amended by the same public act at the same time, yet the roles of the hearing officer are different in the two statutes, and the standard of review when it goes to administrative review are different. And I would suggest that the court take a close look at that, because once again, the legislature made clear we mean that the role of the hearing officer is a significant one. Under the current statute, the hearing officer remains the only party that has expertise, impartiality, and who actually hears the witnesses and makes credibility determinations. The hearing officer is required to make findings of fact in a recommendation, which then goes to the Board of Education. The board is required to incorporate those hearing officers' findings of fact and the recommendation, and it may only modify those findings of fact if they are against the manifest weight of the evidence. If it concludes that the teachers be dismissed notwithstanding the contrary findings of the hearing officer, the board must then give reasons for doing so. And on review, unlike any other statute in the state of Illinois that I've been able to find, the court, this court, is required to consider both the board's decision and the hearing officer's factual findings and recommendations. I think that if you can find another statute that models this in the state of Illinois, I would be surprised. So we're not just looking at existing law that we're all familiar with. We are truly asking this court to make a determination of first impression. Let me interrupt you. You say you're looking if the legislature had a model for this statute, and I would tend to agree that probably in the state of Illinois, regarding administrative review, there's no other model. Did your search go to other states? Is this a model statute for termination of teachers? I did not look in other states, but I know from personal experience, because I was involved in some respects in the formation and the discussions on the language in this, that it was not modeled on some other state. But no, I did not do that research. There are several things I think that we know from this statute. First of all, we know that the Board of Education may only overturn the factual findings of the hearing officer if they are against the manifest way to the evidence. This is the one term of art used by the legislature in the statute that we're all familiar with, and certainly the legislature knew what manifest way to the evidence meant, because all of us know that there's hundreds of cases dealing with that. So we know that the Board doesn't just have the discretion to say, hey, we don't like the factual findings. They have to show that they're against the manifest way to the evidence, and that standard applies throughout the review process to the findings of fact of the hearing officer. That doesn't shift to the Board of Education. When we come to the appellate court, the appellate court doesn't look to the factual findings of the Board of Education to decide whether they're against the manifest way to the evidence. They look to the hearing officer's findings of fact for good reasons. First of all, the burden of proof is always on the Board of Education. That doesn't shift. Secondly, as I stated earlier, the hearing officer is the only one with expertise here. The only expertise of the Board of Education is that they got elected. The Board of Education, the hearing officer, is the only impartial party in this whole process. They're the only ones, he's the only one that doesn't have a dog in the fight, so to speak. The Board of Education certainly can't claim to be impartial. They are the grand jury. They are the prosecutor. Under the statute, they make a decision. If this court says that their ultimate decision is the decision that we must abide by, what would be the purpose of including the hearing officer in including this kind of language in the statute? And furthermore, we know that this court must consider the hearing officer's decision because the legislature tells us that. Now, we would say that the considerable deference should be given to the hearing officer's decision here. It's well-reasoned. It's detailed. He's got expertise. He's impartial. He had an opportunity to sit across the desk and see the witnesses and make those credibility determinations. And for all of these reasons, we believe that the factual findings of the hearing officer should be applied to determine whether or not they support his conclusions. You certainly have to take into consideration the court's factual findings and decision, but it shouldn't be given to deference. And that his decision, really as found by the circuit court, should only be overturned if it is arbitrary, unreasonable, and unrelated to service. And for this reason, we're asking that the decision of Judge Grace and the circuit court be affirmed. Thank you. Thank you. Thank you. Reem Bottle. Thank you, Your Honor. I'll touch on a few of the issues that were raised by opposing counsel. First, it is notable and it is dispositive that counsel denied your honor to address the first issue on appeal with respect to the improper issuance and service of the summons. That's a de novo review under 2619. Both sides are clear this is an administrative review action. That's a fatal failure on the part of the plaintiff to move that review into court when unaddressed. That's sufficient grounds to dismiss the matter and to reverse the decision below. With respect to the statutory interpretation questions and what's been called, I guess, the substantive issue of the dismissal, opposing counsel makes two statements that are a verbal slight of hand. The first is he continually, in the brief and here at bar, has changed the phrase give consideration to, which appears in the statute, to give considerable deference to, which does not appear in the statute, of which is a policy argument, which was rejected by the Legislative Assembly when they moved the final decision to the Board of Education, which they did so explicitly in which the primary sponsor, Senator Blackford, clearly and unambiguously stated in the record in the Senate transcript, which is on page 35 of the brief. Similarly, with respect to the statement of giving reasonable warning, again, counsel engages in a verbal slight of hand where he says give a reasonable time to comply or give a reasonable remediation period. Again, these are concepts that are not present in the statute. Reasonable notice in warning was given, and it's really a matter of record. The final warning, the last chance, which was issued by the Board of Education, in which I began speaking earlier and testified during the hearing that she understood, was given. Once it's issued, that is the reasonable notice. She then has to comply, and the letter says comply immediately and comply at all times, and she did not. Flipping the matter around, there's not a set reasonable time in which you can begin to conform to the guidance that you received in the last chance. If you will just for a moment engage in speculation of any kind of conduct which you think would be sufficient for dismissal, would you be allowing the employee to continue to engage in that misconduct, even after the final unambiguous written warning as they were getting around to it, slowing down but not stopping? That theory is untenable and should be rejected by the court. I think that the issue with regard to the late arrival, the early arrival, the lesson plans, I'm going to make a comparison. We were on the docket for 9 o'clock this morning, but the court's rules require us to be in by 8.30 to sign off. The reason for that 8.30 requirement is so that we can be here at the podium and speaking at 9. In any event that I were to be absent and I were to send in my materials, I would need to send them in with sufficient time for my co-counsel or replacement to be here up at the podium at 9. Ms. Beggs, the plaintiff in this case, repeatedly failed. And this is not widgets, this is not a production line, we're not missing profits. This is high school math, and every minute of instruction that she was not engaging the students in that limited 45 or 50 minute period, those students were drifting further and further behind in a sequential understanding of high school math that will dog them and the district for the rest of their career. The board was clear that she was to be there on time, that's 8.15, for the 8.30 class period. She was to teach the entire what's called bell-to-bell period from 8.30 on. And if she was going to be absent, she needed to have her materials in to the substitute in sufficient time for them to engage in that. Up in front of the class, bell-to-bell teaching. What she did instead was fail to be ready on the first day back and waste, at minimum, 10 to 15 minutes. We believe the well-reasoned evidence is that it's more like 25 minutes. And it's not necessary to be a trained math teacher to figure out whether or not instruction was happening. The testimony was that the aide observed students on their cell phones, students asleep. She thought about getting up and leaving with the student to whom she was assigned. And she went and complained to the principal. And the principal took the matter to the superintendent. And the superintendent interviewed not only her, but 20 of the students in the presence of the IEA union representative. And those notes confirmed and corroborated that series of events. The hearing officer chose to disregard them, but the board decided that they were against the manifest way of the evidence, and that they showed that misconduct. And on the second day, she called in and said, I'm not going to make it in time. That's calling in and saying I won't make it by 8.30. The next two days, she sent her materials in, by her estimate, by his argument, at best, at 8.30 on the dot, to another teacher. A teacher with her own class of students to be instructing at 8.30 in the morning. It's not sufficient, and it deprived the students of the education that they're supposed to receive each and every day following her return. Your Honors, you may disagree with the outcome. That's not sufficient grounds to overturn under administrative review law. And I will submit, even under the standards that the plaintiff suggests, it's not arbitrary or unreasonable or capricious, and it should be affirmed. Thank you. Thank you, counsel. We'll take this case under advisement.